**C.O. LAW, APC**
Clark Ovruchesky, Esq. (301844)
co@colawcalifornia.com
845 15th St., Suite 153
San Diego, California 92101
Telephone: (619) 356-8960

**LOKER LAW, APC**
Matthew M. Loker, Esq. (SBN: 279939)
matt.loker@loker.law
132 Bridge Street
Arroyo Grande, California 93420
Telephone: (805) 994-0177

*Attorneys for Plaintiff,*
William L. Seegers

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WILLIAM L. SEEGERS,**<br><br>Plaintiff,<br><br>v.<br><br>**SUNSTRONG MANAGEMENT LLC, LAUNCH SERVICING, LLC, TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND EQUIFAX INFORMATION SERVICES LLC,**<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I.  **FAIR CREDIT REPORTING ACT;**<br><br>II.  **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT;**<br><br>III.  **FAIR DEBT COLLECTION PRACTICES ACT; AND**<br><br>IV.  **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.  The California Legislature has further enacted the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCRAA"), to ensure that consumer credit reporting agencies exercise their responsibilities with fairness, impartiality, and respect for the consumer's right to privacy. The CCRAA imposes obligations on both consumer credit reporting agencies and furnishers of credit information to maintain and report accurate information about consumers."

3.  Congress enacted the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

CASE NO.:                                        1 OF 29      *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

4.  The California Legislature enacted the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq. ("RFDCPA"), to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.

5.  WILLIAM L. SEEGERS ("Mr. Seegers" or "Plaintiff"), by his attorneys, brings this action to challenge the actions of SUNSTRONG MANAGEMENT LLC ("SUNSTRONG," "Furnisher-Defendants," or "Defendant"), LAUNCH SERVICING, LLC ("LAUNCH SERVICING," "Furnisher-Defendants," or "Defendant"), EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX," "Credit Bureaus," or "Defendant"), TRANS UNION LLC ("TRANSUNION," "Credit Bureaus," or "Defendant"), and EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN," "Credit Bureaus," or "Defendant"), with regard to their reporting of erroneous, negative, and derogatory information on Plaintiff's consumer credit reports, and Defendants' failure to correct such information, which Defendants knew or should have known was inaccurate, and their unlawful attempts to collect an alleged debt that never came into existence, all of which has caused Plaintiff substantial damages.

6.  Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7.  While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8.  Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

CASE NO.:                              **2 OF 29**    *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

9.  Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

10. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**JURISDICTION AND VENUE**

11. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; 15 U.S.C. § 1692k(d); and 28 U.S.C. § 1367 for supplemental state law claims.

12. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1 et seq. ("CCRAA"); (iii) the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"); and (iv) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 et seq. ("RFDCPA").

13. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

14. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the City of Culver City, County of Los Angeles, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

CASE NO.:                              **3 OF 29**     *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

**PARTIES**

15. Plaintiff is a natural person who resides in the City of Culver City, County of Los Angeles, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c), and a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

16. Defendant SUNSTRONG is a limited liability company regularly doing business in the State of California, with a principal address of 20 Greenway Plaza, Suite 540, Houston, TX 77046.

17. SUNSTRONG is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined in 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

18. SUNSTRONG is a "furnisher" of credit information as that term is described in 15 U.S.C. § 1681s-2 et seq., that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with consumers.

19. Defendant LAUNCH SERVICING is a limited liability company regularly doing business in the State of California, with principal addresses of 402 W. Broadway, 20th Floor, San Diego, California 92101.

20. LAUNCH SERVICING is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined in 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

21. LAUNCH SERVICING is a "furnisher" of credit information as that term is described in 15 U.S.C. § 1681s-2 et seq., that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with consumers, including the Account described herein.

CASE NO.:                                         **4 OF 29**    *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

22. LAUNCH SERVICING is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c). In its own written communications to Plaintiff, LAUNCH SERVICING expressly stated: "Launch Servicing, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." LAUNCH SERVICING further disclosed its California Debt Collection License Number 10174-99. At all times relevant, LAUNCH SERVICING was regularly engaged in the collection of consumer debts in California. The alleged obligation that LAUNCH SERVICING sought to collect from Plaintiff constitutes a "consumer debt" as that term is defined by Cal. Civ. Code § 1788.2(f) and a "debt" as that term is defined by 15 U.S.C. § 1692a(5), in that it is an alleged obligation of a natural person arising out of a transaction primarily for personal, family, or household purposes.

23. SUNSTRONG is likewise a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c), as it regularly engages in the collection of consumer debts in the ordinary course of business through its agent LAUNCH SERVICING, and is therefore subject to the RFDCPA.

24. Defendant EXPERIAN is a corporation whose primary corporate address is in the City of Costa Mesa, in the State of California, and is authorized to do business in the State of California.

25. Defendant EQUIFAX is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

26. Defendant TRANSUNION is a limited liability company whose primary corporate address is in the City of Chicago, in the State of Illinois, and is authorized to do business in the State of California.

27. The Credit Bureaus are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

28. The Credit Bureaus are each licensed to do business in California and at all times relevant hereto were regularly doing business in the State of California.

29. The Credit Bureaus are each regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

30. All Defendants are each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

31. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was furnished by SUNSTRONG and LAUNCH SERVICING to consumer reporting agencies regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, and household purposes.

### GENERAL ALLEGATIONS

32. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

33. Furthermore, Defendants conducted business within the State of California at all times relevant.

34. With respect to their FCRA investigations and reinvestigations, the Furnisher-Defendants, rather than training their employees to properly review and investigate disputes, are generally expected to simply confirm whatever information is being reported rather than conducting an actual reasonable investigation.

35. Similarly, the Credit Bureaus each have a policy of simply parroting whatever information is provided by furnishers rather than conducting reasonable reinvestigations under the FCRA and CCRAA.

36. This is because the investigations and reinvestigations conducted by Defendants occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas. This atmosphere is conducive to a speed-minded dispute operator failing to consider, or not looking for, information that is relevant to the consumer's dispute.

37. Such conduct by Defendants is willful and reckless.

38. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they continued reporting patently inaccurate and materially misleading information after Plaintiff formally disputed the reporting and provided detailed documentation establishing that the reported debt never came into existence.

**FACTUAL ALLEGATIONS RE: LAUNCH SERVICING/SUNPOWER/SUNSTRONG MANAGEMENT/LSL/SUNPOWER CORPORATION ACCOUNT NO. 80\* OR \*4505**

39. At all times relevant, Plaintiff was a consumer and an individual residing within the State of California.

///

///

40. On or about April 19, 2024, Plaintiff entered into a Solar and Battery Storage Energy System Home Improvement Contract (Contract No. 5957493) with SunPower Corporation, Systems ("SunPower") for the installation of a 5.25 kW solar panel system and Tesla Powerwall 3 battery storage system at his residence, through Plug It In Solar, Inc. ("Plug It In Solar") as the installer. The total contract price was $86,091.43, to be financed through SunPower Capital, LLC.

41. The SunPower contract and associated loan were established with SunPower Capital, LLC as the financing entity. The account was assigned Contract No. 5957493 and subsequently reported on Plaintiff's credit reports with account number *4505 and an account opening date of July 8, 2024.

42. Prior to the disbursement of any loan proceeds, SunPower Capital, LLC rejected the funding of Plaintiff's solar project. Specifically, the rejection occurred during the closeout photo inspection process following installation. On July 17, 2024, Leeron Dagan, Director of Sales and Operations of Plug It In Solar, Inc., sent a written communication to Andrew Hoesly at SunPower Corporation, with a copy to Cassidy Hall at SunPower Corporation, stating: "We have a small situation on a long-standing project that is a SunPower loan. The HOA would not let us use attachments and only a Ballasted system. We used the Unirac RM5 system and submitted it the HOA and city and got approvals. We already installed and wanted to fund it but Sunpower rejected it during the closeout photo's." The rejection was based on SunPower's refusal to approve the ballasted racking system required by Plaintiff's homeowner's association. At no time did SunPower Capital, LLC, SUNSTRONG, or LAUNCH SERVICING disburse any loan proceeds to Plaintiff or to Plug It In Solar on Plaintiff's behalf.

///

///

43. Because SunPower Capital, LLC rejected and failed to fund the original loan, Plug It In Solar secured alternative financing through Service Finance Company, LLC ("Service Finance"). On August 6, 2024, Plaintiff executed a separate retail installment sale and consumer loan agreement (Security Agreement and Home Improvement Contract, Summary No. 5049758) with Service Finance for the same solar installation at his residence, in the same original amount of $86,091.00. The seller, Plug It In Solar, Inc., signed and closed the contract on September 4, 2024. Service Finance is the only lender that has ever disbursed any funds in connection with Plaintiff's solar installation.

44. Only one solar panel system and battery storage unit was installed at Plaintiff's residence. It is factually impossible for Plaintiff to owe two separate loan obligations of $86,091 each for a single installation.

45. Despite the fact that no loan proceeds were ever disbursed by SunPower Capital, LLC, SUNSTRONG, or LAUNCH SERVICING, Defendants began reporting and continue to report the Account on Plaintiff's consumer credit reports as a valid, active debt with a delinquent payment status.

46. Following SunPower Corporation's bankruptcy, the servicing of the Account was transferred to SUNSTRONG, with LAUNCH SERVICING designated as servicer, by notice dated December 2, 2024. The December 2, 2024 account transfer notice expressly identified LAUNCH SERVICING as a debt collector and included California debt collector disclosures, stating: "Launch Servicing, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." The notice further disclosed LAUNCH SERVICING's California Debt Collection License Number 10174-99 and included a full thirty-day debt validation notice as required by 15 U.S.C. § 1692g.

CASE NO.:                                    9 OF 29      *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

47. Following SunPower Corporation's bankruptcy, the loan was transferred to SunStrong, which began servicing the account in or around September 2024. Plaintiff received billing communications from SUNSTRONG and made four voluntary monthly payments of $327.39 each via ACH on September 7, October 7, November 7, and December 7, 2024, totaling $1,309.56. On December 2, 2024, Plaintiff received a formal account transfer notice from SUNSTRONG, which designated LAUNCH SERVICING as the account servicer going forward. These payments were made in good faith but under the mistaken belief that the billing discrepancy would be promptly resolved. Upon confirming through review of emails and account timelines that SunPower Capital, LLC had never disbursed any loan proceeds, Plaintiff ceased making payments.

48. The Account began reporting as delinquent on Plaintiff's credit reports beginning in February 2025, when the first delinquency was recorded as of February 6, 2025, following Plaintiff's cessation of payments.

49. Through this conduct, SUNSTRONG and LAUNCH SERVICING violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus that they knew or should have known was incomplete or inaccurate. Specifically, SUNSTRONG and LAUNCH SERVICING reported a debt of $86,091 — and a growing delinquent balance that has since escalated to over $90,000 — for a loan for which no consideration was ever provided to Plaintiff. Under California Civil Code section 1550, consideration is an essential element of an enforceable contract. Under California Civil Code section 1605, consideration is defined as "any benefit conferred, or agreed to be conferred, upon the promisor." Because SunPower Capital, LLC rejected the project and never disbursed loan proceeds to Plaintiff or for Plaintiff's benefit, no consideration was provided and no enforceable debt came into existence.

50. As of January 2026, the Account was reporting on Plaintiff's consumer credit reports issued by the Credit Bureaus in the following manner:

- **Account Name:** LSL/SunPower Corporation (Equifax); SunStrong Management (TransUnion); Launch Servicing/SunPower (Experian)

- **Account Number:** *4505 or 80*

- **Date Opened:** July 8, 2024

- **Original Amount:** $86,091

- **Reported Balance:** $90,206

- **Amount Past Due:** $4,028

- **Scheduled Monthly Payment:** $327 per month for 299 months

- **Status:** 180 days or more past due as of July 2025

- **Date of First Delinquency:** February 6, 2025

- **Account Sold To:** SunStrong Capital Holdings LLC

- **Estimated Removal:** October 2031 (Equifax and Experian); January 2032 (TransUnion)

51. This reporting is inaccurate and materially misleading because: (a) no loan proceeds were ever disbursed to Plaintiff or on Plaintiff's behalf; (b) no enforceable debt exists under California law in the absence of consideration, which requires actual disbursement of loan proceeds; (c) the reporting of a delinquent installment balance inaccurately and misleadingly suggests to potential creditors that Plaintiff failed to repay a valid debt; and (d) Plaintiff simultaneously has an active, valid, and performing loan with Service Finance for the same solar installation, meaning the Credit Bureaus' own files simultaneously reflect two $86,091 obligations for a single residential installation — a duplication that reasonable procedures would identify and flag.

52. On February 25, 2025, Plaintiff first formally contacted SUNSTRONG at info@sunstrong.com, to report the incorrectly reported loan and request resolution. SUNSTRONG did not respond in any meaningful way to resolve the dispute.

53. On May 21, 2025, at 10:48 a.m., LAUNCH SERVICING's agent Francis Mack transmitted a form letter to Plaintiff in response to an earlier inquiry regarding the duplicate billing. This communication constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). Rather than providing proof of disbursement, the form letter stated that the original loan agreement with SunPower Capital, LLC "remains unchanged and enforceable" and that Plaintiff's "repayment obligations remain in effect." The form letter attached a copy of the signed loan agreement but provided no documentation whatsoever showing that any loan proceeds were ever advanced to Plaintiff or on Plaintiff's behalf, and did not address whether any disbursement ever occurred.

54. Later that same day, on May 21, 2025, at 1:36 p.m., having received LAUNCH SERVICING's non-responsive form letter, Plaintiff sent a formal written disbursement request directly to SUNSTRONG at complaints@sunstrongmanagement.com. Plaintiff's formal request specifically asked: (1) whether SUNSTRONG or LAUNCH SERVICING ever disbursed any funds to Plug It In Solar or any third party on Plaintiff's behalf in relation to the solar installation; and (2) if funds were disbursed, the date(s), amount(s), and recipient(s) of those funds. Plaintiff requested a written response within 15 business days. Neither SUNSTRONG nor LAUNCH SERVICING ever responded to Plaintiff's formal written disbursement request.

///

///

55. SUNSTRONG's and LAUNCH SERVICING's failure to produce disbursement records — despite Plaintiff's direct and specific written request — is strong evidence that no disbursement occurred. A furnisher that had actually disbursed $86,091 could easily produce wire transfer records, payment confirmations, or disbursement ledgers demonstrating that fact. Neither SUNSTRONG nor LAUNCH SERVICING produced any such records.

56. Throughout the period from April 2025 through the present, LAUNCH SERVICING transmitted monthly billing statements to Plaintiff demanding payment of $327.39 per month on the Account. Each such monthly billing statement constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). Each such communication constituted an attempt to collect an alleged debt that never came into existence, as no loan proceeds were ever disbursed to Plaintiff or on Plaintiff's behalf.

57. On or about January 22, 2026, Plaintiff reviewed his consumer credit reports from all three Credit Bureaus and confirmed that the Account continued to report as delinquent with a balance of $90,206 and a status of 180 days or more past due.

58. On or about January 26, 2026, Plaintiff sent formal written dispute letters via certified mail to each of the Credit Bureaus, disputing the accuracy of the Account and requesting deletion of the tradeline in its entirety. Plaintiff's dispute letters explained in detail: (1) that two separate $86,091 loans were reporting for a single solar installation; (2) that SunPower Capital, LLC had rejected the project before disbursement; (3) that Service Finance was the only lender that funded the installation; (4) that SUNSTRONG and LAUNCH SERVICING had repeatedly refused to provide proof of disbursement despite Plaintiff's requests dating back to February 2025; and (5) that no enforceable

debt can exist under California law without consideration, which requires actual disbursement of loan proceeds. Plaintiff enclosed supporting documentation with each dispute, including the written confirmation from Plug It In Solar that SunPower rejected the project, his formal disbursement request to SUNSTRONG, LAUNCH SERVICING's non-responsive form letter, and the Service Finance loan agreement and billing statement.

59. Each of the Credit Bureaus received Plaintiff's disputes and, upon information and belief, forwarded notice of the disputes to SUNSTRONG and LAUNCH SERVICING, along with the relevant information and supporting documentation provided by Plaintiff, via Automated Consumer Dispute Verification ("ACDV") through the e-OSCAR system or a similar automated system.

60. SUNSTRONG and LAUNCH SERVICING were each required to conduct a reasonable investigation with respect to the disputed information pursuant to 15 U.S.C. § 1681s-2(b)(1)(A). A reasonable investigation would have required SUNSTRONG and LAUNCH SERVICING to review their own disbursement records and determine whether $86,091 was ever advanced to Plaintiff or to Plug It In Solar on Plaintiff's behalf. Their own internal records would definitively answer this question.

61. Despite these obligations, Plaintiff learned in February and March 2026 that each of the Credit Bureaus had verified the inaccurate Account information and continued reporting the Account as delinquent. Specifically:

62. Equifax completed its reinvestigation on February 11, 2026, and reported: "WE HAVE VERIFIED THAT THIS ITEM HAS BEEN REPORTED CORRECTLY."

///

///

63. TransUnion completed its reinvestigation on February 20, 2026, and reported: "We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE; however, we updated: Balance; Remarks; Maximum Delinquency; Historical Trended Data." TransUnion updated the reported balance to $90,196.

64. Experian completed its reinvestigation on February 23, 2026, and reported: "Verified and Updated — The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated."

65. None of the Credit Bureaus deleted the Account or modified its delinquent status following their respective reinvestigations. The Account continues to report on Plaintiff's credit files with all three Credit Bureaus as an open, delinquent installment account with a status of 180 days or more past due, and is not scheduled to be removed from Plaintiff's credit reports until October 2031 (Equifax and Experian) or January 2032 (TransUnion).

66. The Credit Bureaus did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant" pursuant to 15 U.S.C. § 1681i(a)(3).

67. On March 5, 2026, SUNSTRONG's agent transmitted a written communication to Plaintiff in response to an inquiry regarding the duplicate account, stating: "After reviewing your account, SunStrong Management (SSM) has no record of any cancellation request associated with your contract. At this time, the agreement remains active, which is why you are continuing to receive billing statements." This communication constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). This communication falsely represented the legal status of the alleged debt by asserting it "remains active" without providing any proof of disbursement, and used deceptive means to attempt to collect the alleged debt by manufacturing a "no cancellation on file" rationale

while ignoring the core disbursement issue.

68. Defendants' investigations and reinvestigations were not reasonable. SUNSTRONG and LAUNCH SERVICING could have simply reviewed their own disbursement records and determined whether $86,091 was ever advanced to Plaintiff or to Plug It In Solar on Plaintiff's behalf. Instead, they certified the accuracy of their reporting to each Credit Bureau without producing the one piece of evidence that would resolve the core factual question at the heart of this dispute.

69. Similarly, the Credit Bureaus could have readily identified the inaccuracy by cross-referencing the simultaneously reporting Service Finance tradeline — reflecting the same original amount of $86,091, for the same residential address, opened just weeks after the Account — which reports as current and performing. The co-existence of two $86,091 home improvement tradelines for a single residential property, with one in default and one current, is a readily detectable anomaly that reasonable procedures and a reasonable reinvestigation would have identified and flagged. Instead, the Credit Bureaus each conducted superficial reinvestigations and accepted SUNSTRONG's and LAUNCH SERVICING's verification without meaningful inquiry.

70. By verifying the inaccurate Account information after receiving Plaintiff's detailed disputes and supporting documentation, SUNSTRONG and LAUNCH SERVICING failed to:

   a. Conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b)(1)(A);

   b. Review all relevant information provided by Plaintiff in the disputes to the Credit Bureaus as required by 15 U.S.C. § 1681s-2(b)(1)(B);

   c. Report the results of their investigations to the Credit Bureaus as required by 15 U.S.C. § 1681s-2(b)(1)(C);

CASE NO.:                                    **16 OF 29**     *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

    d. Modify, delete, or permanently block the reporting of the inaccurate information as required by 15 U.S.C. § 1681s-2(b)(1)(D); and

    e. Correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E).

71. Through this conduct, SUNSTRONG and LAUNCH SERVICING each violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus that they knew or should have known was inaccurate.

72. The Credit Bureaus each failed to conduct a reasonable reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

73. The Credit Bureaus each violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

74. The Credit Bureaus violated Cal. Civ. Code § 1785.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer credit reports.

75. The Credit Bureaus violated Cal. Civ. Code § 1785.16 by failing to promptly and properly reinvestigate Plaintiff's disputes and failing to delete or correct the inaccurate information in Plaintiff's credit files following the completion of their reinvestigations.

76. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating his dispute with Defendants were fruitless.

77. Defendants' continued inaccurate and negative reporting of the Account in light of Defendants' knowledge of the actual error was willful.

///

///

///

CASE NO.:  17 OF 29  *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

78. Defendants' failure to correct the previously disclosed inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information. Accordingly, Defendants willfully and negligently failed to comply with their respective duties to reasonably investigate Plaintiff's dispute.

79. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

80. By inaccurately reporting Account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required by 15 U.S.C. §§ 1681s-2(b)(1)(D) and (E).

81. As a direct and proximate result of the derogatory and inaccurate information furnished and reported by Defendants, Plaintiff has sustained actual damages including, but not limited to: a reduction in Plaintiff's credit score of approximately 200 points from a pre-incident score of approximately 850; emotional distress, frustration, embarrassment, and anxiety resulting from the prolonged and unresolved inaccurate reporting of a debt that does not exist; significant time expenditure in attempting to investigate and resolve the matter, including repeated rounds of written correspondence with SUNSTRONG, LAUNCH SERVICING, and the Credit Bureaus over the course of more than one year; and the postponement of planned home renovations, including a kitchen renovation for which Plaintiff obtained a time-sensitive written estimate that expired before Plaintiff could proceed, due to Plaintiff's concern regarding the unresolved credit dispute and its impact on Plaintiff's ability to obtain favorable financing terms.

///

///

///

///

**CAUSES OF ACTION CLAIMED BY PLAINTIFF**

**COUNT I**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681-1681X (FCRA)**

**[AGAINST ALL DEFENDANTS]**

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2.

84. SUNSTRONG and LAUNCH SERVICING each violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation into Plaintiff's disputes, failing to review all relevant information provided by the Credit Bureaus, and continuing to furnish inaccurate information about the Account to the Credit Bureaus after receiving notice of Plaintiff's disputes.

85. The Credit Bureaus violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

86. The Credit Bureaus violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct lawful reinvestigations, failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and relying upon verification from a source they had reason to know is unreliable.

87. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each Defendant.

88. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

**COUNT II**

**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**

**CAL. CIV. CODE § 1785.1, ET SEQ.**

**[AGAINST ALL DEFENDANTS]**

89. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

90. The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA including, but not limited to, each and every one of the above-cited provisions of the CCRAA, Cal. Civ. Code §§ 1785.14, 1785.16, and 1785.25.

91. SUNSTRONG and LAUNCH SERVICING each violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus that they knew or should have known was incomplete or inaccurate. SUNSTRONG and LAUNCH SERVICING are each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), and were at all times obligated not to furnish information on a specific transaction or experience to any consumer credit reporting agency if

they knew or should have known that the information was incomplete or inaccurate.

92. The Credit Bureaus violated Cal. Civ. Code § 1785.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's consumer credit reports.

93. The Credit Bureaus violated Cal. Civ. Code § 1785.16 by failing to promptly and properly reinvestigate Plaintiff's disputes and failing to delete or correct the inaccurate information in Plaintiff's credit files following the completion of their reinvestigations.

94. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from each Defendant.

95. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against each Defendant, including punitive damages of $100 to $5,000 per willful violation pursuant to Cal. Civ. Code § 1785.31(a)(2)(B).

### COUNT III

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692 ET SEQ.

### [AGAINST LAUNCH SERVICING ONLY]

96. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), as Plaintiff is a natural person allegedly obligated to pay a consumer debt.

///

///

///

98. The alleged obligation that LAUNCH SERVICING sought to collect from Plaintiff constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5), in that it is an alleged obligation of a natural person to pay money arising out of a transaction primarily for personal, family, or household purposes — namely, the financing of a residential solar energy installation at Plaintiff's home.

99. LAUNCH SERVICING is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), as it regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, another. LAUNCH SERVICING expressly admitted its debt collector status in its December 2, 2024 written communication to Plaintiff, stating: "Launch Servicing, LLC is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose," and further disclosed its California Debt Collection License Number 10174-99.

100. The foregoing acts and omissions of LAUNCH SERVICING constitute numerous and multiple knowing, willful, reckless, or negligent violations of the FDCPA, including but not limited to the following:

a. LAUNCH SERVICING violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of the alleged debt, including by repeatedly representing — through its May 21, 2025 written communication, its March 5, 2026 written communication, and monthly billing statements transmitted from April 2025 through the present — that the alleged debt is valid and legally enforceable, when in fact no loan proceeds were ever disbursed to Plaintiff or on Plaintiff's behalf, and no enforceable debt therefore exists under California law. Each such communication constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). This section is

incorporated into the RFDCPA by Cal. Civ. Code § 1788.17; thus, LAUNCH SERVICING violated Cal. Civ. Code § 1788.17.

b. LAUNCH SERVICING violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the alleged debt, including by asserting in its May 21, 2025 written communication that Plaintiff's "repayment obligations remain in effect" on a loan that was never funded, and by continuing to report a delinquent balance of $90,206 to the Credit Bureaus on a debt for which no consideration was ever provided to Plaintiff. Each such communication constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). This section is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17; thus, LAUNCH SERVICING violated Cal. Civ. Code § 1788.17.

c. LAUNCH SERVICING violated 15 U.S.C. § 1692e(8) by communicating credit information to the Credit Bureaus that it knew or should have known was false, including by: (i) reporting the Account as a valid, active, delinquent installment debt with a balance of $90,206 and a status of 180 days or more past due; (ii) failing to note Plaintiff's dispute when transmitting data to the Credit Bureaus following Plaintiff's January 26, 2026 dispute letters; and (iii) affirmatively certifying the accuracy of the Account to each Credit Bureau during reinvestigation without being able to produce any disbursement records demonstrating that loan proceeds were ever advanced to Plaintiff or on Plaintiff's behalf. This section is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17; thus, LAUNCH SERVICING violated Cal. Civ. Code § 1788.17.

///

///

CASE NO.:                    23 OF 29    *Seegers v. SunStrong Management LLC et al.*
**COMPLAINT**

d. LAUNCH SERVICING violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means in connection with the collection of the alleged debt, including by transmitting a March 5, 2026 written communication asserting the loan "remains active" and that Plaintiff was "continuing to receive billing statements" for that reason — while simultaneously possessing internal communications acknowledging that Plaintiff was being double-charged for the same solar installation, and while never having produced a single record demonstrating that any loan proceeds were disbursed. This communication constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). This section is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17; thus, LAUNCH SERVICING violated Cal. Civ. Code § 1788.17.

e. LAUNCH SERVICING violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the alleged debt, including by: (i) continuing to transmit monthly billing statements to Plaintiff demanding payment of $327.39 per month on a debt that never came into existence; (ii) continuing to furnish derogatory credit information to the Credit Bureaus reporting Plaintiff as 180 days or more past due on an unfunded loan; and (iii) taking collection action on an account for which LAUNCH SERVICING could not produce proof of disbursement despite Plaintiff's specific written demand. Each monthly billing statement constituted a "communication" as that term is defined by 15 U.S.C. § 1692a(2) and a "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b). This section is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17; thus, LAUNCH SERVICING violated Cal. Civ. Code § 1788.17.

f. LAUNCH SERVICING violated 15 U.S.C. § 1692f(1) by attempting to collect an amount — including a reported balance of $90,206 and monthly payments of $327.39 — that is not authorized by any agreement creating an enforceable debt, nor permitted by law. Because SunPower Capital, LLC rejected the solar project and never disbursed any loan proceeds to Plaintiff or on Plaintiff's behalf, no consideration was ever provided to Plaintiff within the meaning of Cal. Civ. Code §§ 1550 and 1605, and no enforceable repayment obligation therefore came into existence. This section is incorporated into the RFDCPA by Cal. Civ. Code § 1788.17; thus, LAUNCH SERVICING violated Cal. Civ. Code § 1788.17.

101. As a result of each and every negligent violation of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from LAUNCH SERVICING.

102. As a result of each and every willful violation of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages of up to $1,000 per action pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from LAUNCH SERVICING.

## COUNT IV

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

## CALIFORNIA CIVIL CODE §§ 1788. ET SEQ.

## [AGAINST SUNSTRONG AND LAUNCH SERVICING ONLY]

103. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104. Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h), as Plaintiff is a natural person from whom SUNSTRONG and LAUNCH SERVICING sought to collect an alleged consumer debt.

105. The alleged obligation that SUNSTRONG and LAUNCH SERVICING sought to collect from Plaintiff constitutes a "consumer debt" as that term is defined by Cal. Civ. Code § 1788.2(f), in that it is an alleged obligation of a natural person to pay money arising out of a transaction primarily for personal, family, or household purposes — namely, the financing of a residential solar energy installation at Plaintiff's home.

106. LAUNCH SERVICING is a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c), as it regularly engages in debt collection in the ordinary course of business. LAUNCH SERVICING expressly admitted its debt collector status in its December 2, 2024 written communication to Plaintiff and disclosed its California Debt Collection License Number 10174-99.

107. SUNSTRONG is likewise a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c), as it regularly engages, directly and through its agent LAUNCH SERVICING, in the collection of consumer debts in the ordinary course of business in California.

108. The foregoing acts and omissions of SUNSTRONG and LAUNCH SERVICING constitute numerous and multiple knowing, willful, reckless, or negligent violations of the RFDCPA, including but not limited to violations of Cal. Civ. Code § 1788.17, which incorporates the obligations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f, and 1692f(1), as fully alleged in Count III above and incorporated herein by reference. Each violation of the FDCPA as alleged in Count III constitutes a separate and independent violation of Cal. Civ. Code § 1788.17 by both SUNSTRONG and LAUNCH SERVICING.

109. As a result of each and every negligent violation of the RFDCPA, Plaintiff is entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from SUNSTRONG and LAUNCH SERVICING.

110. As a result of each and every knowing or willful violation of the RFDCPA, Plaintiff is entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); a penalty of not less than $100 nor more than $1,000 per knowing or willful violation pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from SUNSTRONG and LAUNCH SERVICING.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff WILLIAM L. SEEGERS prays that judgment be entered against Defendants as follows:

**As to All Defendants — Counts I and II (FCRA and CCRAA):**

- An award of actual damages in an amount to be determined at trial, or in the alternative statutory damages of up to $1,000 per willful violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A), against each Defendant individually;

- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against each Defendant individually for each incident of willful noncompliance with the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against each Defendant individually for each incident of negligent noncompliance with the FCRA;

- An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against each Defendant individually;

- An award of actual damages in an amount to be determined at trial pursuant to Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(a)(2)(A) against each Defendant individually;

- An award of punitive damages of $100 to $5,000 per willful violation pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against each Defendant individually;

- An award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(d) against each Defendant individually;

- Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b), including an order requiring all Defendants to permanently delete the Account from Plaintiff's consumer credit reports and to cease furnishing or reporting any information related to the Account;

**As to LAUNCH SERVICING, LLC only — Count III (FDCPA):**

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of statutory damages of up to $1,000 per action pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

**As to SUNSTRONG MANAGEMENT LLC and LAUNCH SERVICING, LLC — Count IV (RFDCPA):**

- An award of actual damages pursuant to Cal. Civ. Code § 1788.30(a);

- A penalty of not less than $100 nor more than $1,000 per knowing or willful violation pursuant to Cal. Civ. Code § 1788.30(b);

- An award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c);

**As to All Defendants:**

- Pre-judgment and post-judgment interest at the maximum legal rate; and

- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

111. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: April 6, 2026                                    Respectfully submitted,


                                                        **LOKER LAW, APC**


                                          By:   ___/s/ Matthew M. Loker
                                                MATTHEW M. LOKER, ESQ.
                                                ATTORNEY FOR PLAINTIFF